ROY WOOD v. STATE.

156 So. 125.

Division B.

Decision Filed February 12, 1934.
Petition for Rehearing Granted April 10, 1934.
Opinion on Rehearing Filed May 30, 1934.

*J. McHenry Jones, Harvey E. Page* and *Terry Richardson,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant for the State.

PER CURIAM.—This cause, having heretofore been submitted to the Court upon the transcript of the record and of the judgment herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is, therefore, considered, ordered and adjudged by the Court that the said judgment of the Circuit Court be, and the same is hereby affirmed.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur.

ELLIS, J.—Roy Wood was charged with the offense of murder in the second degree and convicted of that offense in the Court of Record of Escambia County in December, 1932, and sentenced to confinement in the State Prison at hard labor for a period of thirty years.

A few days after the conviction the accused took a writ of error to the judgment and that judgment was affirmed by this Court, Division B, in February, 1934.

A petition for rehearing was filed in which it is alleged that the Court omitted to consider the fact appearing in the record that the accused was on his "own property" when he killed the deceased Burdette, who at the time was making a "hostile demonstration" toward the defendant; that fact appearing in the record the defense of self-defense was involved in the case and that although the accused requested appropriate charges elucidating the law of self-defense none were given.

Burdette was killed by a shot from a pistol, the ball entering the left breast just below the heart and lodging in the backbone. The shooting occurred at a place in west Pen-

sacola known as the Wehmeier place. Upon it was located a rooming house and cafe managed and operated by a woman named Lulu Jennings. She and a woman named Helen Nicks and Herman Burdette, the man who was killed, had returned from an automobile ride in Burdette's automobile. They left the house of Lulu Jennings about six o'clock in the afternoon. On returning the automobile was driven to the back of the house used as a rooming house and into a small house probably used as a garage. After leaving the automobile, which was immediately after it was placed in the garage, the three walked toward the house. The evidence is not at all clear as to the distance between the rooming house and garage. The point is material as that somewhere in that space the accused approached the three persons, the two women and Burdette, who were going toward the house, and shot Burdette.

It does not appear on what terms the accused had his habitation and abode in the Lulu Jennings rooming house. She was an important and apparently fair witness for the State. She witnessed the assault of Wood, the accused, upon Burdette, saw the accused fire the fatal shot and heard him as she thought when he warned the three of them, the man Burdette and two women, to "break." They were approaching the house, the women on the arms of Burdette. The dramatic order to "break" probably proceeded from the killer's sense of chivalry which at least gave the women a chance to escape the possibility of injury from a wild shot. In spite of the apparent effort of the State's counsel to impeach the witness, her testimony, after eliminating immaterial and unimportant statements, is a clear, simple, concise narration of the events which occurred that Sunday afternoon of the 17th of January, 1932, at the Wehmeier place.

Just what position Roy Wood occupied in the Lulu Jennings household does not clearly appear except from his own testimony in which he stated that he lived at the place where Burdette was killed as joint proprietor of the business with Mrs. Lulu Jennings. It appeared to be a business which was attended by much drinking of whiskey on the part of one of the proprietors at least and most of the inmates and roomers. Burdette had been there for a month, during which time his attentions to Mrs. Jennings and Helen Nicks and his whiskey drinking habits had incurred the displeasure of Roy Wood, who requested Burdette and the woman Nicks to leave the place.

The request in turn aroused the resentment of Burdette who made threats of violence against Wood. So much may be gathered from the testimony of Wood. Some of the threats were communicated to Wood. The threats were uncertain in character, but were assumed to be threats of violence.

The story of the killing as related by Wood is a weak apology for his deadly use of the pistol. He sought to construct a defense of self-defense upon his statements that he had seen Burdette with a pistol on his person a short time before the shooting, had seen the pistol on the bed in Burdette's room; the man's resentment against Wood because the latter had requested him to leave the house; his evident drunken condition upon his return to the house that afternoon, and his still smouldering resentment against Wood, all this and the uncertain light of the late afternoon caused Wood to believe that a bottle of whiskey which Burdette held in his hand and from which he and his two female companions who were then upon his arms proceeding unsteadily toward the house, had been drinking, was the same "army automatic forty-five" pistol which Wood said he

once saw in Burdette's possession, and that Burdette intended to kill Wood with it.

That defense the jury did not accept as reasonable. The shooting of Burdette occurred outside the yard beyond the gate to the fence which enclosed the plat on which the house was located. Wood advanced from the house toward the approaching trio of persons. Wood called to them to "break," by which nothing else was meant than a warning to the women that he intended to shoot and that they might get out of range of his bullet. So the court did not consider that instructions to the jury upon that element of self-defense which excuses one who kills another from retreating from his own premises, but may stand his ground against an aggressor, were applicable to the facts.

The court did instruct the jury upon the law of self-defense. At the request of counsel for the accused the court instructed the jury on the matter of threats made by the deceased as bearing upon the apprehension of the accused as to the intentions of the deceased in his so-called hostile demonstration toward the accused. The charges given were complete and presented the rule as to every phase of the law of self-defense.

The court refused the requested instruction numbered 10 which deals with the right of one upon his own premises to stand his ground and meet any attack made upon him with such force as he has reason to believe and does believe is necessary to save his life and protect himself from great bodily harm.

The refusal to give that instruction was based on the opinion of the court that it was inapplicable to the facts in evidence.

We have again reviewed the evidence as presented by the bill of exceptions in the case and our judgment is confirmed

by such re-examination of the facts that the refusal of the requested instruction was correct.

It cannot be said with any degree of accuracy that a single element was present in the defendant's case definitely and clearly of the rule which in defense of one's self from the attacks of an aggressor permits him while upon his own home premises to stand his ground and refuse to retreat and use such force as may be necessary to preserve himself from great bodily harm.

In the first place the shooting did not occur on the premises in the sense that the word embraces the dwelling house and curtilage; secondly, Burdette was as much a resident of the place as Wood. He was a boarder who still had possession of his room. Wood advanced upon the three approaching persons and not they or any of them upon him. Burdette was unarmed. A bottle with a small quantity of whiskey in it was the thing which might have served him as a weapon at close quarters. Wood was armed, had armed himself in anticipation of trouble; warned the women to get out of range of his bullet and then fired on Burdette, whose principal offense at that time seemed to be a mellow sentimentality toward two women whose inebriated condition seemed to render them susceptible to his physical charms much to the disgust of Wood who laid some claim to the possession of the favors of one of the women, if in no other right than joint proprietor of a house of questionable fame.

The first decision of this Court in affirming the judgment is reaffirmed and the petition for rehearing is denied.

WHITFIELD, TERRELL and BROWN, J. J., concur.

DAVIS, C. J., and BUFORD, J., dissent.

DAVIS, C. J. (dissenting).—I think the Court erred in refusing to give requested charge No. 10, asked for by de-

fendant.  My conception of the law is that a defendant as well as the state may have a theory consistent with the evidence upon which charges may be predicated to be considered by the jury in weighing the evidence for and against the defendant's theory of the case.  The fact that evidence preponderates against the defendant's theory is no ground for refusing an applicable charge on a matter of law.

BUFORD, J., concurs.